# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: RANDALL SCOTT EASTBURG and
LISA SUE EASTBURG,

No. 7-10-10131 JA

Debtors.

BUKE, LLC, a New Mexico
limited liability company,

    Plaintiff,

v.

Adversary No. 10-1024 J

RANDALL SCOTT EASTBURG and
LISA SUE EASTBURG,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion to Stay State Court Action Pursuant to 11 U.S.C. § 105(a) ("Motion") filed by the Defendants, Randall Scott Eastburg and Lisa Sue Eastburg (together, the "Eastburgs"), by and through their attorneys of record, Hunt & Davis, P.C. (Chris W. Pierce). The Court held a final, evidentiary hearing on the Motion on October 7, 2010 and took the matter under advisement. At issue is whether the Court should exercise its equitable powers pursuant to 11 U.S.C. § 105(a) to stay ongoing state court litigation filed pre-petition by BUKE, LLC ("BUKE") against the Eastburgs and other defendants entitled *BUKE, LLC v. Cross Country Auto Sales, LLC, et al.,* Case No. CV 2009 07479 ("State Court Action").[1]

---

[1] This Court previously entered a memorandum opinion and order determining that neither the discharge injunction under 11 U.S.C. § 524 nor this Court's exclusive jurisdiction over dischargeability actions under 11 U.S.C. § 523(a)(2), (4), or (6) precludes BUKE from prosecuting its claims against the Eastburgs in the State Court Action. *See* Docket Nos. 36 and 37. That decision is currently on appeal to the Tenth Circuit Bankruptcy Appellate Panel.

## ARGUMENTS OF THE PARTIES

In support of their Motion, the Eastburgs principally rely on two arguments. First, they assert that because of their current financial condition, unless this Court enjoins prosecution of the State Court Action, they would be forced to proceed *pro se* in that ligation, whereas they have the means to pay counsel to represent them in this adversary proceeding. Second, they assert that even if BUKE were to prevail in the State Court Action, it would not obviate the need for this Court to conduct a trial on BUKE's dischargeability claims. For these reasons, the Eastburgs assert that prosecution of the State Court Action would defeat or impair this Court's jurisdiction, and should be enjoined.

BUKE counters with two principal arguments. First, BUKE asserts that there is no good reason for this Court to enjoin prosecution of its claims against the Eastburgs in the State Court Action because prosecution of those claims does not interfere with this Court's jurisdiction. BUKE concedes that this Court has exclusive jurisdiction over its non-dischargeability claims, but argues that proceeding first in state court pursuant to the state court's concurrent jurisdiction would be the most efficient way to resolve its claims. Second, BUKE argues that a trial in this adversary proceeding against the Eastburgs and a separate trial in State Court against the co-defendants in that action would not be substantially more burdensome on the Eastburgs, whereas two such trials would be much more costly to BUKE, be an inefficient use of judicial resources, and permit the Eastburgs to gain an unfair tactical advantage by placing BUKE at risk of receiving inconsistent rulings on discovery issues from the state court and this Court.

**FACTS**

BUKE commenced the State Court Action on June 24, 2009 by filing a complaint seeking damages against the Eastburgs and other defendants asserting claims under state law for an accounting, conversion, civil conspiracy, breach of fiduciary duty, usurpation of corporate opportunity, unfair competition, interference with contractual relations, and violation of the New Mexico Rackeeteering Act as a result of the defendants in that action allegedly engaging in acts that constitute larceny in violation of N.M.S.A. 1978 § 30-16-1, fraud in violation of N.M.S.A. 1978 § 30-16-6, and embezzlement in violation of N.M.S.A. 1978 § 30-16-8. BUKE alleges that Randall Eastburg was managing member and part owner of various limited liability companies that owned and operated automobile dealerships (the "dealership entities"), one of which was BUKE. BUKE further alleges, among other things, that Randall Eastburg improperly caused BUKE to 1) purchase hundreds automobiles for the benefit of other dealership entities at auto auctions closed to those entities using BUKE's credit facilities, without payment of proper compensation to BUKE; 2) pay costs and expenses related to such vehicles and financing, including curtailment charges, without reimbursement by the other dealership entities to BUKE, and 3) in dealer-to-dealer transfers, purchase vehicles from other dealership entities at above market prices and sell vehicles to other dealership entities at below market prices.

The State Court Action involves multiple defendants, expert witnesses, and a jury trial. Mr. John Kelly, who is BUKE's lead attorney in the State Court Action, characterizes the State Court Action as a labor-intensive documents case.

There are seven named defendants in the State Court Action in addition to the Eastburgs (hereafter, the "Co-Defendants"). The claims against all the defendants in the State

Court Action are based entirely or substantially on Randall Eastburg's conduct, both as an individual and managing member of the Co-Defendants. Only one of the Co-Defendants currently is an operating entity. The remaining Co-Defendants either have closed their businesses, or never existed as separate entities. The Eastburgs no longer own an interest in any of the Co-Defendants.

On January 15, 2010, the Eastburgs commenced their chapter 7 bankruptcy case in the United States Bankruptcy Court for the District of New Mexico, Case No. 10-101031 (the "Eastburg Bankruptcy Case"). On March 3, 2010, BUKE commenced this adversary proceeding. BUKE's non-dischargeability complaint against the Eastburgs asserts claims for conversion, civil conspiracy, breach of fiduciary duty, usurpation of corporate opportunity, unfair competition, interference with contractual relations, and violation of the New Mexico Rackeeteering Act as a result of the Eastburgs allegedly engaging in acts that constitute larceny in violation of N.M.S.A. 1978 § 30-16-1, fraud in violation of N.M.S.A. 1978 § 30-16-6, and embezzlement in violation of N.M.S.A. 1978 § 30-16-8, and requests that the alleged debt arising from those claims be declared nondischargeable under 11 U.S.C. §§ 524(a)(2)(A) and 523(a)(4).[2] BUKE also seeks a judgment for damages against the Eastburgs as part of the adversary proceeding.

The facts BUKE alleged in the State Court Action and in this adversary proceeding are substantially the same. Prosecution of the claims against the Eastburgs and Co-Defendants in the State Court Action and against the Eastburgs in this adversary proceeding will require the same or substantially the same pretrial discovery, lay and expert witness testimony, and documentary evidence. Randall Eastburg would be a principal fact witness at each trial. The

---

[2] BUKE also requests a declaration regarding the scope of the discharge injunction arising from entry of a discharge order in the Eastburg Bankruptcy Case, and in the alternative for modification of the discharge injunction.

-4-
Case 10-01024-j    Doc 59    Filed 11/04/10    Entered 11/04/10 15:06:03 Page 4 of 19

discovery taken in the State Court Action as of the date of the hearing on the Motion consisted of document discovery and interrogatories. Discovery needed to prepare for trial in the State Court Action would largely duplicate discovery needed to prepare for trial in this adversary proceeding. BUKE's lead attorney in the State Court Action represented to this Court that it is difficult to predict whether or to what extent BUKE would be permitted to submit special interrogatories to the jury in the State Court Action to request findings of any facts that are necessary for a determination of non-dischargeability in this action but not required for BUKE to prevail on a state law claim.

On September 10, 2010, a Scheduling Order was entered in the State Court Action. The Scheduling Order provides, in part, that 1) a five-day jury trial is set to commence on December 5, 2011 as number 1 on the docket; 2) the parties have until December 1, 2010 to amend the pleadings and add parties; 3) the parties are to file lists of anticipated fact witnesses in January and February of 2011 and of expert witnesses in April 2011, and expert witnesses are to be available for deposition within two weeks thereafter; 4) the parties will participate in a mediation conference no later than June 1, 2011; and 5) the discovery completion date is August 15, 2011. All other pre-trial deadlines in the Scheduling Order are on or after September 15, 2011.

BUKE is considering whether to add one or more additional defendants in the State Court Action. Any such additional defendant likely would be an individual that allegedly engaged in conduct in furtherance of actions allegedly taken by Randall Eastburg. Particularly if additional defendants are added in the State Court Action, there is some risk that the trial could not be completed in five days, and the December 5, 2011 trial date would be postponed. The Eastburgs' original counsel of record in the State Court Action withdrew.

The Eastburgs' counsel in this adversary proceeding is now also counsel of record for the Eastburgs in the State Court Action, and represented to the Court that he will continue to represent the Eastburgs in this adversary proceeding. He also represented to the Court that if the State Court Action is not stayed, he intends to seek to withdraw as their counsel in that action.

The Eastburgs testified at the final hearing that they have insufficient income with which to pay attorneys' fees to defend the State Court Action, and that if forced to litigate BUKE's claims against them in the State Court Action they except to proceed without counsel in that action. Randall Eastburg testified that the Eastburgs expect to have rental income of $5,500 per month until June 2011 from which they can pay attorneys' fees and costs, but unless their circumstances change in a manner not presently anticipated, they will be unable to pay substantial additional amounts for attorneys' fees and costs. Lisa Eastburg testified that the State Court Action has taken a devastating emotional toll on her and her family, and that they prefer to finish the litigation sooner rather than later. The Eastburgs also believe that it will be substantially less expensive for them if BUKE's claims are determined in bankruptcy court.

The Court finds that the Eastburgs' cost to defend the State Court Action, which involves a five-day jury trial and multiple defendants and a longer time before trial, likely will be significantly higher than the cost to defend this adversary proceeding. A trial of this adversary proceeding could reasonably be held well in advance of December 2011, and the trial would be a bench trial with the Eastburgs being the only defendants.

DISCUSSION

A. Authority of the Bankruptcy Court to Enjoin State Court Proceedings

BUKE points out that federal courts generally do not have authority to enjoin state court proceedings because of the Anti-Injunction Act, 28 U.S.C. § 2283. The Anti-Injunction Act provides:

> A *court of the United States* may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. (emphasis added).

This statutory language provides that the Anti-Injunction Act applies only to a "court of the United States." 28 U.S.C. § 2283. In *In re Courtesy Inns, Ltd., Inc.,* 40 F.3d 1084 (10th Cir. 1994), the Tenth Circuit found that the bankruptcy court is not a "court of the United States" as defined in 28 U.S.C. § 451; consequently, the bankruptcy court could not impose sanctions under 28 U.S.C. § 1927, which applies only to a "court of the United States." *Courtesy Inns,* 40 F.3d at 1986.[3] The definition of "court of the United States" set forth in 28 U.S.C. § 451 "is applicable to all of Title 28." *Id.*[4] The Anti-Injunction Act is part of Title 28. Since this Court is bound by the Tenth Circuit's holding in *Courtesy Inns,* the Court

---

[3] Circuit courts are split on this issue. *Compare In re Schaefer Salt Recovery, Inc*., 542 F.3d 90, 105 (3rd Cir. 2008) (finding that a bankruptcy court is a unit of the district court which is a "court of the United State" and "thus the bankruptcy court comes within the scope of §451."); *In re Parker*, 499 F.3d 616, 626 (6th Cir. 2007)(holding that 11 U.S.C §105(a) is an "expressly authorized " exception under the Anti-Injunction Act, thereby at least implicitly finding that the Anti-Injunction Act applies to bankruptcy courts); and *In re Cohoes Indus. Terminal, Inc.,* 931 F.2d 222, 230 (2nd Cir.1991) (bankruptcy courts have the authority to impose sanctions under 28 U.S.C. § 1927, thereby at least implicitly finding that the bankruptcy court is a "court of the United States) *with In re Perroton*, 958 F.2d 889, 894-895 (9th Cir.1992)(holding that the bankruptcy court is not a "court of the United States" within the meaning of 28 U.S.C. §451).

[4] Section 451 of Title 28 states in relevant part:
As used in this title:
The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.
28 U.S.C. §451.

concludes that the Anti-Injunction Act does not apply to bankruptcy courts and, therefore, is not a limitation on the bankruptcy court's power to grant an injunction to stay proceedings in a state court.

Because the Anti-Injunction Act is inapplicable, the bankruptcy court may use its equitable powers under 11 U.S.C. § 105 to enjoin pending state court litigation without regard to the limitations contained in the Anti-Injunction Act. Section 105 provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
>
> 11 U.S.C. § 105(a).

A stay of litigation in another forum may be "necessary or appropriate" to ensure that the state court proceeding does not hurt the bankruptcy estate[5], impair a debtor's reorganization efforts[6], or after termination of the automatic stay when the dischargeability of a particular debt has not yet been determined.[7]

---

[5] *See Fisher v. Apostolou,* 155 F.3d 876, 882 (7th Cir. 1998)(stating that "[t]he jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include 'suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate,' (quoting *Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161-162 (7th Cir. 1994)), or 'the allocation of property among creditors.'" (quoting *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1992)(remaining citations omitted)); *In re Neuman,* 71 B.R. 567, 573 (S.D.N.Y. 1987)("Even though the Bankruptcy Court may enjoin the state court action on the grounds that it interferes with the reorganization proceedings, the court also has the power to issue such an injunction on the grounds that the Bankruptcy Court, rather than another court, should be the forum to decide whether an asset is property of the estate.").

[6] *See Baldwin-United Corp. v. Pain Webber Group, Inc. (In re Baldwin-United Corp.),* 57 B.R.759, 766 (S.D.Ohio 1985)(reasoning that because §105 "empowers the bankruptcy court to 'issue any order, process or judgment that is necessary to carry out the provisions' of the bankruptcy code . . . . a bankruptcy court may enjoin litigation in other forums if it determines that it would distract the debtors from concentrating on and effecting their reorganization plan.")(citation omitted); *In re Gander Partners, LLC,* 432 B.R. 781, 787 (Bankr.N.D.Ill. 2010)(stating that "[a] section 105 injunction restraining creditors from proceeding against nondebtors is justified only if the creditor actions would interfere with, deplete or adversely affect property of a debtor's estate or which would frustrate the statutory scheme embodied in Chapter 11 or diminish a debtor's ability to formulate a plan of reorganization.")(citing *In re Lazarus Burman Assocs.,* 161 B.R. 891, 898 (Bankr.E.D.N.Y. 1993)).

[7] *See In re Edler,* 416 B.R. 147, 152 (Bankr.E.D.Pa. 2009)(suggesting that "[t]o the extent that a creditor might contend that it has the right to proceed in state court after termination of the automatic stay because the discharge

B.  Applicable Injunction Standard.

To evaluate a request to enjoin litigation pending in a different forum under 11 U.S.C. § 105, Courts often use traditional preliminary injunction standards,[8] although such standards may be adapted to the bankruptcy context. "[C]ourts have applied the "traditional preliminary injunction standard as modified to fit the bankruptcy context[ ]" to determine whether an injunction should issue pursuant to 11 U.S.C. §105(a). *In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007)(quoting *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp., Inc.,* 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20, 2006)).[9] Under the general preliminary injunction standard as articulated by the Tenth Circuit, the movant must show:

> (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harms that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.
>
> *Wilderness Workshop v. U.S. Bureau of Land Management* 531 F.3d 1220, 1224 (10th Cir. 2008)(quoting *Gen. Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007)).[10]

---

in junction is inapplicable to the debt whose dischargeability is yet to be determined, it would be within the bankruptcy court's power to restrain the creditor from proceeding in state court pending conclusion of the dischargeability proceeding.")(citing 11 U.S.C. § 105).

[8] *See* 2 *Collier on Bankruptcy*, ¶ 105.03[1], 105-36 (Alan N. Resnick and Henry J. Sommer, eds. 16th ed. rev. 2009)(stating that "[m]any courts begin an analysis of whether an injunction under section 105 is appropriate by reciting the traditional standard for issuance of a preliminary injunction."). *See also, In re Otero Mills, Inc.,* 25 B.R. 1018, 1021 (D.N.M. 1982)(finding that the bankruptcy court appropriately applied the traditional preliminary injunction test in determining whether to enjoin parties from proceeding in state court against third parties to prevent adverse or detrimental influence and pressure on the debtor that would interfere with its reorganization).

[9] *See also* 2 *Collier on Bankruptcy,* ¶105.03[2], 105-42 (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. rev. 2009)(noting that "[m]any courts reformulate the generic preliminary injunction standard to fit the particular needs of bankruptcy generally and the language of section 105 specifically."). For example, in the context of considering whether to enjoin state court proceedings to prevent interference with the reorganization process, the bankruptcy court does not consider the merits of the claims asserted in the state court proceeding. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1094-96 (9th Cir. 2007)(holding that "the usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a)," but that the likelihood of success prong in this context requires a showing of a reasonable likelihood of a successful reorganization, rather than a likelihood of success in the arbitration proceedings between two non-debtor parties sought to be stayed).

[10] *See also Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001)(same).

"The manner by which a court considers the factors, the relative weight given to each, and the standards by which a movant is required to prove them, are driven by the special and unique circumstances of any given case." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 999 (10th Cir. 2004), *aff'd and remanded by* 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006).[11]

In adapting the preliminary injunction standard to the bankruptcy context, some Courts reformulate, relax[12] or even eliminate[13] some of the traditional elements. This Court will apply the traditional preliminary injunction standards to the Eastburgs' request for injunctive relief, adapted to the special and unique circumstances of this case.[14]

**Likelihood of Success**

In the bankruptcy context the likelihood of success prong of the preliminary injunction standard does not necessarily entail a determination of the likely outcome of the state court

---

[11] In general, '[e]mphasis on the balance of [irreparable harm to plaintiffs and defendants] results in a sliding scale that demands less of a showing of likelihood of success on the merits when the balance of hardships weighs strongly in favor of the plaintiff, and vice versa.' *In re Microsoft Corp. Antitrust Litigation,* 333 F.3d 517, 526 (4th Cir. 2003). Thus, the more likely a movant is to succeed on the merits, 'the less the balance of irreparable harms need favor the [movant's] position.' *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir. 2001). And, alternatively, 'if there is only slight evidence that plaintiff will be injured in the absence of interlocutory relief, the showing that he is likely to prevail on the merits is particularly important.' *Canal Auth. Of State of Florida v. Callaway,* 489 F.2d 567, 576-77 (5th Cir. 1984).
*O Centro Espirita v. Ashcroft,* 389 F.3d at 1002.

[12] *See In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 860 (6th Cir. 1992)(likelihood of success prong for granting a preliminary injunction was relaxed to achieve a basic purpose of 11 U.S.C. § 105(a), which the reorganization of a debtor's business).

[13] *See LTV Steel Co., Inc. v. Board of Education (In re Chateaugay Corp.),* 93 B.R. 26, 29 (S.D.N.Y. 1988)(stating that "[t]he usual grounds for injunctive relief such as irreparable injury need not be shown in a proceeding for an injunction under section 105(a)." )(citing *Neuman,* 71 B.R. at 571); *In re L & S Indus., Inc.,* 989 F.2d 929, 932 (7th Cir. 1993)(stating that in the bankruptcy context " the court does not need to demonstrate an inadequate remedy at law or irreparable harm.").

[14] When considering whether to enjoin state court litigation to permit the bankruptcy court to adjudicate objections to discharge or dischargeability, some courts do not apply the traditional injunctions standards. *See, e.g., In re Crocker*, 362 B.R. 49, 57 (1st Cir.BAP 2007*)*("to preserve the bankruptcy court's jurisdiction over the dischargeability issues," under 11 U.S.C. § 105(a) bankruptcy courts may enjoin state court actions in which non-dischargeability claims under 11 U.S.C. §523(a)(1) are asserted even though state and federal courts have concurrent jurisdiction over non- dischargeability claims under that Section)*; In re AS Management Services, Inc.*, 2007 WL 2100514, *6 (Bankr. S.D.Fla. July 12, 2007). However, both *Crocker* and *AS Management* found that §105 is an "expressly authorized" exception to the Anti-Injunction Act, 28 U.S.C. § 2283, which is inapplicable to this Court under binding Tenth Circuit precedent.

proceeding the movant seeks to enjoin. For example, in Chapter 11 cases, where the objective of the request for injunction is to prevent state court litigation from negatively impacting the debtor's ability to reorganize, courts often define the likelihood of success prong of the preliminary injunction standard in terms of the probability of a successful reorganization.[15] In adopting this standard, one court explained:

> The Bankruptcy Code is designed to achieve either a reorganization or a fresh start, and §105 injunctions may be issued only as 'necessary or appropriate to carry out the provisions of this title.' 11 U.S.C. § 105. It makes sense to adopt a preliminary injunction standard with these principles in mind.

*In re United Health Care Organization,* 210 B.R. 228, 233 (S.D.N.Y. 1997).

Here, the Eastburgs filed a Chapter 7 case in which no reorganization is sought, so the probability of a successful reorganization cannot be used as a measure of the likelihood of success. In *Archambault v. Hershman (In re Archambault),* 174 B.R. 923 (Bankr.W.D.Mich. 1994), the bankruptcy court applied preliminary injunction standards in a Chapter 7 case in which the debtor sought to enjoin the prosecution of state court litigation against a third party allegedly liable with the debtor on a debt, and suggested that the "'likelihood of success on the merits' factor must be analyzed as to the possible success of the litigation which the debtor seeks to enjoin *as well as the effect of that litigation on the debtor's fresh start.*" *Archambault,* 174 B.R. at 934 (emphasis added).

There is no evidence before this Court regarding whether the Eastburgs are likely to prevail in the State Court Action. If this were the only measure of the likelihood of success, the Eastburgs fall short. But in the Chapter 7 context, as suggested by *Archambault,* the

---

[15] *See, e.g., Otero Mills,* 25 B.R. at 1021 (noting that the bankruptcy court "defined 'likelihood of success on the merits' as the probability of a successful plan of reorganization."); *Exel Innovations,* 502 F.3d at 1095 (holding "that a debtor seeking to stay an action against a non-debtor must show a reasonable likelihood of a successful reorganization[ ]" rejecting appellants' contention that the likelihood of success prong required the debtor to demonstrate a likelihood of success on its complaint in the adversary proceeding alleging a violation of the automatic stay).

furtherance of the Bankruptcy Code's fresh start objective also bears on the Court's determination of the movant's likelihood of success.

A fundamental purpose driving the bankruptcy system is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Williams v. U.S. Fidelity & Guaranty Co.,* 236 U.S. 549, 554-555, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)(citations omitted). [16] This fundamental purpose is embodied in the provisions of 11 U.S.C § 523(a). To carry out those provisions, it is appropriate that debtors, if reasonably possible, be afforded an opportunity for a meaningful determination on the merits of non-dischargeability claims against them. With these principles in mind, with regard to the likelihood of success prong of the preliminary injunction standard, it makes sense to require the Eastburgs to demonstrate a reasonable likelihood that they will be deprived of a fresh start without a meaningful determination on the merits of BUKE's non-dischargeability claims against them if no injunction is issued. Under this standard, the Court finds that the Eastburgs have demonstrated a sufficient likelihood of success.

The Eastburgs testified that under their current financial condition, they would be forced to proceed without counsel in the State Court Action, whereas they have the means to pay counsel to represent them in this adversary proceeding. If the Eastburgs proceeded *pro se* in the State Court Action to a litigated judgment, there is a reasonable likelihood the

---

[16] *See also Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)(the purpose of the Bankruptcy Act is to give "the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."); *In re Vickers*, 577 F.2d 683, 686-87 (10th Cir. 1978)("One of the primary purposes of the Bankruptcy Act is the rehabilitation of an honest debtor by discharging his debts to afford him a fresh start in his economic life."); *Green v. Welsh*, 956 F.2d 30, 33 (2nd Cir.1992)("The protection afforded by the discharge injunction furthers one of the primary purposes of the Bankruptcy Code – that the debtor have the opportunity to make a "financial 'fresh start.'")(citations omitted).

Eastburgs would be deprived of a meaningful determination on the merits of BUKE's non-dischargeability claims against them and whether the Eastburgs merit a fresh start.

### Balancing of Harms.

An important element for the Court to weigh in considering whether to impose an injunction is the balance of harms.[17] In balancing the harms, the considerations particularly relevant here are judicial economy, litigation costs to the parties, and avoiding inconsistent results in two forums.

The Eastburgs testified at the final hearing that they have insufficient income with which to pay attorneys' fees to defend the State Court Action, and that they will be forced to proceed without counsel in the State Court Action. For financial and emotional reasons they prefer to finish litigation of nondischargeablity claims against them sooner, rather than later, and perceive that it will be less expensive and take less time to proceed in the bankruptcy court. The Court acknowledges that the cost to defend the State Court Action through trial, which involves a jury trial and multiple defendants, likely will be significantly higher than the cost to defend this adversary proceeding. Such greater litigation costs may harm the Eastburgs.

Further, it is not at all clear that litigation of the claims against the Eastburgs in the State Action would substantially reduce litigation costs for BUKE or obviate the need for two lengthy trials involving much of the same evidence and testimony. BUKE intends to rely on the judgment it obtains in the State Court Action to establish its non-dischargeability claims in this adversary proceeding based on collateral estoppel principles. However, if BUKE were to prevail in the State Court Action only on certain of its claims against the Eastburgs it may not

---

[17] *See* 2 Collier on Bankruptcy, ¶ 105.03[1][c], 105-41 (Alan R. Resnick and Henry J. Sommer, eds., 16th ed. rev. 2009)("The 'balance of harms' element is arguably the most critical element of a section 105 injunction . . .").

be possible for BUKE to obtain jury findings that lay the factual predicate necessary to sustain a non-dischargeability claim without the need for a trial in this adversary proceeding.

The Ninth Circuit addressed use of jury findings to sustain a non-dischargeability claim in *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The plaintiff asserted a copyright infringement claim in state court, and obtained a jury finding that the defendant's infringement was willful. *Id.* at 707. "[T]he jury was instructed that copyright infringement was willful if the defendant 'knew that they were infringing the [plaintiff's] copyrights or that they acted with reckless disregard as to whether they were doing so.'" *Id*. In the defendant's bankruptcy case, the plaintiff sought to use the jury finding to establish willful conduct under 11 U.S.C. § 523(a)(6). *Id.* The Ninth Circuit held that the jury finding of "willful" conduct did not support a determination of non-dischargeability under 11 U.S.C. § 523(a)(6) because "[e]ven though recklessness is sufficient for a finding of willful copyright infringement, the Supreme Court has clearly held that injuries resulting from recklessness are *not* sufficient to be considered willful injuries under § 523(a)(6) of the Bankruptcy Code. . . ." *Id.* (emphasis in the original).

Similarly, with respect to one or more of BUKE's state law claims against the Eastburgs, jury findings may be sufficient for BUKE to prevail on the state law claim but not sufficient to sustain a determination of non-dischargeability. Consequently, if BUKE were to prevail only on those claims, and was not permitted to submit special interrogatories to the jury to establish the factual predicate for the non-dischargeability of those claims, a second trial in this adversary proceeding would be needed. BUKE's lead attorney in the State Court Action represented to this Court that it is difficult to predict whether or to what extent BUKE would be permitted to submit special interrogatories to the jury in the State Court Action to

request findings necessary for a determination of non-dischargeability but not required for BUKE to prevail on a state law claim. Without knowing what special interrogatories to the jury would be permitted, if any, prediction of the extent of that second trial in this Court is problematic.

For example, to prevail on a non-dischargeability claim for fraud, a creditor must demonstrate that: "1) [t]he debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was [justifiable][18]; and the debtor's representation caused the creditor to sustain a loss,"[19] whereas under the state law cause of action plead by BUKE in the State Court Action, "[f]raud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations." N.M.S.A. 1978 § 30-16-6 (2008 Cum. Supp.). Based on the language of the New Mexico statute, it does not appear that fraud in violation of the statute is limited to false representations made with intent to deceive.

Another example is BUKE's claim for conversion. A non-dischargeability claim based on conversion requires a showing that the debtor acted willfully and maliciously in converting the creditor's collateral. *See* 11 U.S.C. § 523(a)(6). The "willful" requirement under 11 U.S.C. § 523(a)(6) requires an intentional act and an intentional harm.[20] Willful and malicious conduct is not included in BUKE's allegation of the conduct constituting

---

[18] *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)(changing the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable.").

[19] *Fowler Bros v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996).

[20] Section 523(a)(6) of the Bankruptcy Code provides: "a discharge under . . . this title does not discharge an individual from any debt . . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). ). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate act or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)(emphasis in original).

conversion of assets; it is alleged in the alternative in connection with a claim for punitive damages. [21] However, a lesser showing is required to recover punitive damages based on BUKE's state law claim of conversion than is required to establish non-dischargeability under 11 U.S.C. §523(A)(6).[22]

Thus, if this Court were presented only with findings by a jury that the Eastburgs committed fraud in violation of N.M.S.A. 1978 § 30-16-6 and tortious conversion accompanied by a finding of "willful, wanton, malicious, reckless, oppressive, or fraudulent conduct" in support of a punitive damages award, BUKE would be unable to use collateral estoppel principles to establish its non-dischargeability claims under 11 U.S.C §§523(a)(2) and 523(a)(6)[23] as a matter of law based on a judgment obtained in the State Court Action. Yet, BUKE would not be precluded from presenting evidence in this adversary proceeding to prove facts not established in the State Court Action in support of its non-dischargeability claims.

On the other hand, should the Eastburgs prevail in the State Court Action, they will not be put at risk of having to relitigate the claims against them in this adversary proceeding based on a different standard of proof. At the final hearing on the Motion, BUKE agreed that

---

[21] *See* Exhibit 1, p. 10, ¶¶ 63-67. BUKE alleges, in connection with its claim for punitive damages, that "[t]he acts of Randall Eastburg . . . were intentional, willful, wanton, malicious **and/or** undertaken with utter disregard for the rights of BUKE." (emphasis added). *See* Exhibit 1, p. 10, ¶ 67.

[22] To recover punitive damages under state law tort claims, New Mexico courts have held that to recover punitive damages it must be found that the defendant's conduct is "willful, wanton, malicious, reckless, oppressive, or fraudulent" defined as follows:

"A mental state sufficient to support an award of punitive damages will exist when the defendant acts with 'reckless disregard' for the rights of the plaintiff-i.e., when the defendant *knows* of potential harm to the interests of the plaintiff but nonetheless 'utterly fail [s] to exercise care' to avoid the harm." (alteration in original). In reviewing the question whether evidence is sufficient to establish a culpable mental state, we must bear in mind that the limited purpose of punitive damages is " 'punish[ing] a wrongdoer,' and deterring future tortious conduct."

*McNeill v. Rice Engineering and Operating, Inc.,* 133 N.M. 804, 812-13, 70 P.3d 794, 802-03 (N.M. App. 2003)(internal citations omitted).

[23] Although BUKE has pleaded a claim for conversion in this adversary proceeding, BUKE has not specifically requested relief under 11 U.S.C §523(a)(6) or sought to amend its Complaint to assert such relief. The Court is not making a ruling on whether BUKE may assert such a claim.

to the extent the standard of proof for the state court claims that also support a non-dischargeability claim is higher than the preponderance of the evidence standard applicable to non-dischargeability actions, BUKE would abide by the determination in the State Court Action. In other words, should the state court rule against BUKE, it would not seek to re-litigate those claims in this adversary proceeding under a lower standard of proof.

BUKE's counsel testified that the Eastburgs' actions that form the basis of its non-dischargeability claims also form the basis of BUKE's claims against the non-debtor defendants in the State Court Action. Discovery as between BUKE and the Co-Defendants would proceed in the State Court Action even if this Court were to enjoin the State Court Action against the Eastburgs. That discovery would be largely duplicative of the discovery in this adversary proceeding.[24] There would also be a risk of inconsistent rulings on discovery issues by the State Court and this Court. Because the State Court Action includes non-debtor defendants, any depositions of the Eastburgs, expert witness and non-party witnesses taken in this adversary proceeding and not in the State Court Action would likely have to be re-taken in the State Court Action where the Co-Defendants would have an opportunity to participate.[25]

The Court can and will fashion relief to mitigate the harm to both parties without issuing an injunction. The Court can conduct a trial in the adversary proceeding, and make a decision on BUKE's non-dischargeability claims, before the trial in the State Court Action commences. However, discovery to prepare for trial in this adversary proceeding could be

---

[24] Although Eastburgs' counsel represented that he intends to withdraw as their counsel in the State Court Action if this Court does not issue the requested injunction, counsel may reconsider that intention if his representation of the Eastburgs in the State Court Action is limited largely to discovery that would take place in this adversary proceeding even if the injunction had issued.

[25] *See* N.M.R.Civ.P. 30(B)(1) ("A party desiring to take the deposition of any person upon oral examination shall give at least ten (10) days notice in writing to every other party to the action."); *Matter of Kent Nowlin Const. Co., Inc.,* 99 N.M. 294, 296, 657 P.2d 621, 623 (1982)(stating that N.M.C.P. 30, "requires that all parties to an action must receive notice and be afforded the opportunity to attend the depositions.").

conducted in the State Court Action but in a timeframe consistent with the trial setting in the adversary proceeding. Proceeding in this manner will avoid or mitigate the need for expensive duplicative discovery in the State Court Action and this adversary proceeding and minimize the risk of inconsistent discovery rulings in the two actions.[26] Upon resolution of the claims in this adversary proceeding, further prosecution of the claims against the Eastburgs in the State Court Action would be barred by the discharge injunction, or would be unnecessary as a result of a binding decision on the merits by this Court. Further, by conducting the trial of this adversary proceeding first, and providing ample advance notice of the trial setting, the State Court can plan for the trial against the Co-Defendants in an orderly fashion. Although, absent a settlement, BUKE would need to participate in two trials, one against the Co-Defendants in the State Court Action and another against the Eastburgs in bankruptcy court, it is not at all clear that a trial first conducted in State Court would avoid that result.

**Irreparable Injury.**

The Eastburgs have not demonstrated that they will suffer irreparable injury absent a stay of the State Court Action in view of the relief the Court will fashion to mitigate the harm to both parties without issuing an injunction.

**Public Policy.**

Public policy in favor of allowing debtors a fair opportunity to emerge from their financial difficulties with a fresh start is served by setting a trial in the adversary proceeding

---

[26] If any party were to believe that some discovery needs to be taken in this adversary proceeding so, for example, a ruling on a discovery issue would be made by this Court to preserve the issue for appeal or to limit evidence at trial, such discovery could be sought in this proceeding or in both actions simultaneously. If a party were to assert that discovery sought in this adversary proceeding should take place solely in the State Court Action, that party could file a motion for protective order in this proceeding. The Court believes the parties can make pre-trial discovery workable in accordance with the procedure outlined in this opinion. However, the Court if necessary reserves the right at the request of a party to alter that procedure or even revisit the injunction issue.

sooner, rather than later, and providing a forum for adjudication of the issues in which the debtors can afford counsel. But it is not necessary to stay the State Court Action in order to further this public policy.

Public policy also favors judicial economy and minimizing expense for the parties to the litigation. The most efficient use of judicial resources and the most economical way to resolve the pending litigation between the parties, is to allow the State Court Action to proceed, but set a trial on the merits of this adversary proceeding before the scheduled trial date in the State Court Action with discovery taking place in State Court. The result the Court has fashioned in refusing to issue the injunction will "maximize protection and minimize prejudice" to both parties.[27]

Based on the foregoing, the Court will deny the Motion. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: 11/4/2010

COPY TO:

**William R Keleher**
Attorney for Plaintiff
PO Box 2168
Albuquerque, NM 87103-2168

**Chris Pierce**
Attorney for Defendants
PO Box 30088
Albuquerque, NM 87190

---

[27] 2 Collier on Bankruptcy ¶ 105.02[2] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. rev. 2009).